IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| TWYLA STALLWORTH and JERMARI MARSHALL, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 2:24cv243-MHT (WO) |
| JOHN G. BARTON, in his individual capacity; and CITY OF ANDALUSIA, ALABAMA | ) ) ) ) | |
| Defendants. | ) | |

OPINION AND ORDER

Plaintiffs in this case are Twyla Stallworth and her son Jermari Marshall.  They have named as defendants the City of Andalusia, Alabama and one of its police officers, John G. Barton.  Stallworth and Marshall bring two sets of claims, one federal and the other state.

As to the set of federal claims, Stallworth and Marshall assert the following two claims pursuant to 42

U.S.C. § 1983 against Officer Barton: (1) Stallworth asserts an unlawful-arrest claim; and (2) she and Marshall assert an excessive-force claim. The court has federal-question jurisdiction over these two claims pursuant to 28 U.S.C. §§ 1331 & 1343. As to the set of state claims, Stallworth and Marshall assert the following three claims against Barton and Andalusia: (1) Stallworth asserts a false-arrest claim; (2) she asserts a false-imprisonment claim; and (3) she and Marshall assert an assault and battery claim. The court has supplemental jurisdiction over these three claims pursuant to 28 U.S.C. § 1367.

This case is before the court on Barton and Andalusia's motion for summary judgment. As to the two federal claims, summary judgment will be granted in favor of Barton and against Stallworth and Marshall. As to the three state claims, the court will reserve deciding whether summary judgment is appropriate on them, and instead will require that the parties brief the issue of

2

whether the three claims should be dismissed with leave to be refiled in state court.

## I. SUMMARY-JUDGMENT STANDARD

Summary judgment may be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from the facts in favor of that party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). When "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment is appropriate. *Id.* "In essence, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided

3

that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

## II. FACTUAL BACKGROUND

As stated, Stallworth and Marshall are mother and son, and Barton was an Andalusia Police Officer.

The arrest of Stallworth and the moments leading up to it were captured by Barton's body-worn camera and partially captured by Marshall's cellphone camera. The parties do not dispute the accuracy of the body-worn camera footage. *See* Pls.' Resp. in Opp'n to Summ. J. (Doc. 28) at 4.[1] Any facts not resolved by the body-worn camera footage or other evidence in the record must be viewed "in the light most favorable to" the non-moving party. *Johnson v. City of Miami Beach*, 18 F.4th 1267, 1269 (11th Cir. 2021). The facts obtained from the

---

1. All page numbers cited in this opinion refer to the parties' numbering of documents and not the page numbers assigned by the electronic case file system.

4

footage of the incident, as well as from the supplemental declarations in the record, are as follows.

On the afternoon of February 23, 2024, Stallworth called the Andalusia Police Department to report her neighbor for playing loud music. She informed the dispatcher that she was setting her car alarm off in retaliation to her neighbor's music. *See* Stallworth Decl. (Doc. 28-1) ¶ 2; *see also* Dispatcher Scofield Decl. (Doc. 20-41) ¶ 4.

Later that afternoon, Officer Barton went to Stallworth and Marshall's home in response to a noise complaint.[2] Before he reached the door, Stallworth came out on her front porch to meet Barton. Barton informed Stallworth that there had been four noise complaints

---

2. Barton maintains that, before being dispatched to Stallworth's home, he had heard the car alarm when responding to another call nearby. He also maintains that he knew that another officer had been dispatched earlier in the day for a noise complaint against Stallworth due to her car alarm. *See* Barton Decl. (Doc. 20-43) ¶ 10-20.

called in against her for continuously setting off her car alarm. Stallworth did not deny that she had been setting off her car alarm. Barton then warned Stallworth that if she turned her car alarm on again he would cite her, and if she did it once more after that he would "take her to jail." Body-Worn Camera Footage (Doc. 20-8) at 1:33.

Stallworth stated that, if her neighbor turned his music on again, "it is what it is." *Id*. at 1:38-40. She also stated that "it is what it is" regarding possible consequences of a citation or jail. *Id*. Barton replied that he was just "tell[ing Stallworth] how it is," and Stallworth turned to go back inside her house. *Id*. at 1:40-42. Barton told Stallworth that he needed to see her identification card, and she refused. Stallworth then asked her son Marshall to come onto the porch to record, which he did. After additional back-and-forth, Barton told Stallworth that he would arrest her if she didn't provide her identification. Stallworth turned,

6

saying she had to go back into the house to get her shoes. As Stallworth was entering the house, Barton grabbed her wrist and attempted to pull her back toward him.

Stallworth began yelling and stepping further into the home, turning to face Barton, who was still on the porch and advancing toward her. Marshall simultaneously stepped in to block Barton, putting his free hand in front of Barton. Barton then pushed Marshall and entered the home. Stallworth began yelling at Barton for pushing her son. Barton entered the home, stating that he would give Stallworth "one more chance" to "give [him her] ID or go to jail." *Id*. at 3:11. Barton then pushed Stallworth onto the couch behind her and handcuffed her. Stallworth's skirt lifted up during the push and exposed her upper thighs and vaginal area.[3] After being

---

3. Stallworth alleges that her "vaginal area was exposed" during this encounter. Stallworth Decl. (Doc. 28-1) ¶ 17. It is unclear from the video whether Stallworth's vagina area was actually exposed. However, viewing the evidence in the light most favorable to Stallworth, the court assumes that it was.

7

handcuffed, Stallworth stood up and Barton walked her to his car.

Once Stallworth was in the back of the police car, Barton, at Marshall's request, used his phone to pull up the Alabama statue he claimed Stallworth had violated. The statute, Ala. Code § 15-5-30, did not mention a requirement to show an identification card, which Marshall pointed out. Barton then said, "I know, but I am not going to argue with you." *Id*. at 7:04.

Barton got into his car and drove Stallworth to the county jail. The body-worn camera footage ends after their arrival. In total, Barton was at Stallworth and Marshall's home for around seven minutes. The arrest began roughly two and a half minutes after the first contact between Barton and Stallworth. Stallworth and Marshall had no visible physical injuries in the videos, nor did they submit evidence of any injuries.

Stallworth asserts that she had her mugshot taken and was strip searched after arriving at the county jail.

8

*See* Stallworth Decl. (Doc. 28-1) ¶ 20.  She also contends that she was put into an ill-fitting uniform and spent 15 hours in a cold jail cell.  *See id.* ¶ 21.  She was charged with obstructing governmental operations, resisting arrest, and attempting to elude law enforcement.  *See id.* ¶ 22.  She paid a bond of $ 3,035.00 and was released from jail after about 15 hours.  *See id.*

## III.  THE FEDERAL CLAIMS

As stated, Stallworth and Marshall assert the following two federal claims: (1) Stallworth asserts an unlawful-arrest claim against Officer Barton; and (2) she and Marshall assert an excessive-force claim against him.

A.  *Stallworth's Unlawful-Arrest Claim Against Officer Barton:*  Barton asserts a qualified-immunity defense against Stallworth's unlawful-arrest claim. Qualified immunity is an affirmative defense intended to shield government officials from liability for civil damages unless "their conduct [violates] clearly

9

established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

"An officer asserting a qualified-immunity defense bears the initial burden of showing that he was acting within his discretionary authority." *Patel v. Lanier Cty.*, 969 F.3d 1173, 1181 (11th Cir. 2020) (citations and internal quotation marks omitted). Here, the parties agree that Barton was acting within the scope of his discretionary authority during the arrest. *See* Pls.' Resp. in Opp'n to Summ. J. (Doc. 28) at 7. Therefore, the burden shifts to Stallworth to show that "(1) the defendant[] violated [her] federal constitutional or statutory rights" and "(2) those rights were clearly established at the time [the defendant] acted." *Reese v. Herbert*, 527 F.3d 1253, 1272 (11th Cir. 2008) (citations omitted).

Stallworth alleges that Barton violated her clearly

10

established Fourth Amendment right to be free from unlawful arrest. An arrest without probable cause is a clear violation of this right. *See Durruthy v. Pastor*, 351 F.3d 1080, 1088 (11th Cir. 2003). Probable cause exists where "a reasonable officer could conclude--considering all of the surrounding circumstances, including the plausibility of the explanation itself--that there was a substantial chance of criminal activity." *District of Columbia v. Wesby*, 583 U.S. 48, 49 (2018) (citation and internal quotation marks omitted). However, to be shielded by qualified immunity in the unlawful-arrest context, "an officer need not have actual probable cause, but only 'arguable' probable cause." *Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010) (citation and internal quotation marks omitted). Arguable probable cause exists where "a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests." *Garcia*

11

*v. Casey*, 75 F.4th 1176 (11th Cir. 2023) (quoting *Wesby*, 583 U.S. 48, 50 (2018)).   Moreover, arguable probable cause need not exist for the crime the officer thought or said occurred; officers may assert qualified immunity if arguable probable cause existed to arrest an individual for any crime.  *See Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020); *see also Garcia,* 75 F.4th 1176 at 1187.

At the time of Stallworth's arrest, Officer Barton informed her that he was arresting her because she refused to produce identification in violation of Ala. Code § 15-5-30.  *See* Pls.' Resp. in Opp'n to Summ. J. (Doc. 28) at 2.    This statute provides that a law-enforcement officer "may stop any person abroad in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or other public offense and may demand of him his name, address and an explanation of his actions."  Ala. Code § 15-5-30. To overcome qualified immunity, Stallworth asserts that

Barton violated her constitutional rights because he arrested her without arguable probable cause under this statute.[4]

---

4.    Stallworth argues that, at the time of her arrest, arguable probable cause did not exist to arrest her under § 15-5-30 for refusing to show her identification, because the statute does not require it. *See* Pls.' Resp. in Opp'n to Summ. J. (Doc. 28) at 8-12. She relies on *Edger v. McCabe*, where the Eleventh Circuit Court of Appeals stated:  "Section 15-5-30 does not require anyone to produce an 'ID' or 'driver's license' as [the] Officer ... demanded.  Indeed, it does not require anyone to produce anything.  Instead, it grants Alabama police the authority to request three specific pieces of information."  84 F.4th 1230, 1238 (11th Cir. 2023).  The appellate court then concluded that "no reasonable officer could interpret the law to permit Mr. Edger's arrest for obstructing governmental operations by violating § 15-5-30."  *Id*. at 1240.

However, just days ago, on March 13, 2026, the Alabama Supreme Court*, in Jennings v. Smith,* called into question the *Edger* court's description of the reach of § 15-5-30 and stated that the statute "does not exclude from its purview a request for physical identification when a suspect provides an incomplete or unsatisfactory response to an officer's demand to provide his or her name and address and an explanation of his or her actions" and that, "[i]f the officer's demand for a name and address is not heeded ... [t]he officer can ... arrest the suspect for intentionally preventing the officer from performing a governmental function in violation of § 13A-10-2(a)(2)."  ___ So.3d___, ___ 2026 WL 706449, at

Barton does not *now* maintain that arguable probable cause existed to arrest her under § 15-5-30 for refusing to show her identification.  Instead, he contends that he had arguable probable cause to arrest Stallworth for violating several other statutes, including the disorderly conduct statute, Ala. Code § 13A-11-7.[5] Stallworth does not meaningfully address this argument.[6]

---

*4-5 (Ala. 2026).  Thus, it may be that, based on *Jennings*, Barton had arguable probable cause to arrest Stallworth pursuant to § 15-5-30.

This court, however, need not reach the import of *Jennings* because it finds that Barton had arguable probable cause to arrest Stallworth under another statute.

5.  Barton also maintains that arguable probable cause existed to arrest Stallworth for violations of: Ala. Code § 13A-10-2 (obstructing governmental operations); Ala. Code § 13A-10-41 (resisting arrest); Ala. Code § 13A-10-52 (fleeing or attempting to elude); Ala. Code § 13A-11-8(a) (harassment); Ala. Code § 32-5-213 (improper use of a horn); Andalusia City Code § 1-9 (failure to obey a lawful order); and Andalusia City Code § 15-17(a) (local noise ordinance). *See* Defs.' Mem. in Supp. of Summ. J. (Doc. 20) at 68.

6.  Stallworth fails to engage with the 'any crime' rule and instead characterizes Barton's arguments

The disorderly conduct statute, § 13A-11-7(a)(2), provides, in part, that: "A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance, or alarm, or recklessly creating a risk thereof, he or she does ... the following: ... Makes unreasonable noise." The record reflects that multiple calls were made to the police regarding Stallworth's repeatedly setting off her car alarm. Stallworth does not dispute this. At the time of the arrest, Barton was aware of these prior calls and a neighbor confirmed to him that Stallworth's house was where the repeated car alarm was coming from. Although the car alarm was never set off in Barton's presence,

---

regarding arguable probable cause for crimes other than the one stated at the time of arrest as "attempts to time travel to change[][the basis of] Ms. Stallworth's arrest." Pls.' Resp. in Opp'n to Summ. J. (Doc. 28) at 9. Yet, binding precedent instructs this court to consider whether arguable probable cause existed to arrest for any crime. *See, e.g.*, Garcia, 75 F.4th 1176 at 1187.

15

Stallworth in essence admitted to the conduct and suggested to Barton that she would continue to set her alarm off if her neighbor continued playing his music loudly. *See* Body-worn Camera Footage (Doc. 20-8) at 1:36-38. Stallworth's exact words were "if [my neighbor] cuts his music [on], it is what it is, you cite me, it is what it is, you take me to jail, it is what it is." *Id.*

Car alarms are intended to be loud and draw attention. Without exigent circumstances, repeatedly setting off a car alarm on a quiet, residential street could be viewed as making unreasonable noise considering the loud and obnoxious nature of the alarm. Knowing all of this, a reasonable officer in Barton's position could have determined that arguable probable cause existed to arrest Stallworth for the offense of "[m]ak[ing] unreasonable noise." Ala. Code § 13A-11-7(a)(2). And Stallworth's words to Barton could also be taken as evidence of her intent to cause "public inconvenience"

or "annoyance" in retaliation to her neighbor's music, or at minimum a conscious disregard of "the risk" that her actions would have this effect.  § 13A-11-7(a).

Accordingly, because arguable probable cause existed to arrest Stallworth for disorderly conduct, Barton is entitled to qualified immunity against Stallworth's unlawful-arrest claim, and the court need not address the other statutes raised by Barton.[7]

B. *Stallworth and Marshall's Excessive-Force Claim Against Officer Barton:*  Stallworth and Marshall assert that Barton violated their clearly established Fourth Amendment right to be free from excessive force during Stallworth's arrest.  *See* Pls.' Resp. in Opp'n to Summ. J. (Doc. 28) at 13.

---

7. Probable cause is a comparatively low evidentiary standard, and a finding of arguable probable cause does not intend to suggest that enough evidence existed regarding Stallworth's actions and mental state to ultimately support a conviction for violating the disorderly conduct statute.

17

Stallworth and Marshall appear to raise an excessive-force claim under the theory that any force used during the arrest was excessive because the arrest itself was unlawful  As Barton correctly notes, excessive force claims of this nature are "subsumed by the false arrest claim[s]" and fail as a matter of law.  Defs.' Mem. in Supp. of Summ. J. (Doc. 20) at 69 (citing *Khoury v. Miami-Dade Cnty. Sch. Bd.*, 4 F.4th 1118, 1130 (11th Cir. 2021)).  Thus, this theory is meritless.

Furthermore, Stallworth and Marshall fail to lay out any separate excessive-force claim, and instead argue that discovery is needed to determine what injuries they suffered as a result of Barton's actions.  *Id.* at 14. Although Stallworth and Marshall have not properly asserted a separate excessive-force claim regarding these unidentified injuries, the court will, alternatively and so as to complete the record, indicate why such a claim is meritless here.

18

The law "permits some use of force" during an arrest, even for minor offenses. *Brown v. City of Huntsville*, 608 F.3d 724, 740 (11th Cir. 2010). However, "the force used by a police officer in carrying out an arrest must be reasonably proportionate to the need for that force." *Lee v. Ferraro*, 284 F.3d 1188, 1198 (11th Cir. 2002). Use of excessive force in the course of an arrest is a clear violation of the Fourth Amendment's "freedom from unreasonable searches and seizures." *Id*. at 1197.

A law-enforcement officer is entitled to qualified immunity for use of force during an arrest, a defense asserted by Barton, *see* Defs.' Mem. in Supp. of Summ. J. (Doc. 20) at 70-86, "if an objectively reasonable officer in the same situation could have believed the use of force was not excessive." *Vinyard v. Wilson*, 311 F.3d 1340, 1347 (11th Cir. 2002) (citation omitted). When determining whether a use of force was impermissibly excessive, relevant factors include: "(1) the severity of the crime; (2) whether the individual 'poses an

19

immediate threat to the safety of the officers or others'; (3) whether the individual actively resists or tries to evade arrest by flight; (4) the need for force to be applied; (5) the amount of force applied in light of the nature of the need; and (6) the severity of the injury." *Hinson v. Bias*, 927 F.3d 1103, 1117 (11th Cir. 2019) (citations omitted) (quoting *Crenshaw v. Lister*, 556 F.3d 1283, 1290 (11th Cir. 2009) (per curiam)).

Here, Officer Barton's use of force was not excessive. After declaring that Stallworth was under arrest, Barton grabbed her wrist when she turned to go into her house to get her shoes. Barton also pushed Marshall when he tried to get between Barton and Stallworth. Marshall did not fall because of the push, nor does he provide evidence of any physical injury from this push. Barton also pushed Stallworth onto her couch to place handcuffs on her. Again, Stallworth provided no evidence of physical injury from this use of force. While Stallworth's arresting offense was minor and while

20

she did not pose a safety threat at the time of the incident, Barton's use of force against Stallworth and Marshall was also comparatively minor, and a reasonable officer in Barton's position could have believed the same.

Being arrested can certainly be a traumatizing experience and may create lasting emotional and mental damage. However, the video evidence shows that there is no genuine dispute about whether Barton's force was excessive under the law. Barton used reasonable force in carrying out this arrest and is entitled to qualified immunity from Stallworth and Marshall's excessive-force claim.[8]

---

8. In Stallworth and Marshall's brief in opposition to the motion for summary judgment filed by Barton and Andalusia, they conclude with this statement: "The Plaintiff [sic] respectfully request this Honorable Court to deny the Defendant Officers' summary judgment in its entirety and *grant Plaintiffs' summary judgment against the Defendants.*" Pls.' Resp. in Opp'n to Summ. J. (Doc. 28) at 18. However, Stallworth and Marshall have not filed a motion for summary judgment, and the court has, accordingly, set  no such motion down for briefing

## IV. THE STATE CLAIMS

Finally, the court turns to the remaining three state claims Stallworth and Marshall assert against Barton and the City of Andalusia: (1) Stallworth brings a false-arrest claim; (2) she brings a false-imprisonment claim; and (3) Stallworth and Marshall bring an assault and battery claim. As stated, the court has supplemental jurisdiction over these claims under 28 U.S.C. § 1367.

However, a district court has discretion to decline supplemental jurisdiction over a claim if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); *see also Michael*

_____

by the parties. Whether Stallworth and Marshall are entitled to summary judgment is, therefore, not properly before the court. *See Stein v. TitleMax of Georgia, Inc.*, 819 F. App'x 809, 814 (11th Cir. 2020) (holding that a request to the court is not properly raised when it is solely embedded in an opposition brief and not filed as a separate motion). In any event, and alternatively, Stallworth and Marshall are not entitled to summary judgment in their favor on their federal claims for the same reasons Barton and Andalusia are entitled.

22

*Linet, Inc. v. Vill. of Wellington*, 408 F.3d 757, 763 (11th Cir. 2005) (affirming a district court's ability to decline supplemental jurisdiction under § 1367(c)(3) when summary judgment was granted in favor of the defendant on the federal claim). Courts are "strongly encourage[d]" to dismiss state claims when the federal claims have been dismissed, *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1984), unless the principles of "judicial economy, convenience, fairness, and comity" counsel otherwise. *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988)).

Here, the court has now resolved all of the federal claims. But fairness dictates that, in addressing whether to dismiss the state claims, the court should consider whether these claims may still be brought in state court. *See L.A. Draper*, 735 F.2d at 430 (holding that a plaintiff's "inability to obtain a state forum for

23

its claims would render the district court's dismissal of the pendent claims an abuse of discretion").

According to Alabama law, Stallworth and Marshall had two years from the date of the injury to file their state claims in state court. *See* Ala. Code § 6-2-38(l) ("All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."). The injury in this action occurred on or about February 23, 2024, the day that Barton arrested Stallworth. Therefore, it appears that the statute of limitations would have expired on February 23, 2026. However, under 28 U.S.C. § 1367(d), the statute of limitations for a dismissed supplemental state claim "shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period." The tolling provision of § 1367(d) applies to state claims against municipalities and their officers. *See Jinks v. Richland*

24

*Cnty., S.C.,* 538 U.S. 456, 466 (2003) (holding that "section 1367(d) tolls the limitations period with respect to state-law causes of action brought against municipalities") (emphasis deleted); *see also Fletcher v. City of Madison*, No. 23-10873, 2025 WL 1074415, at *11 (11th Cir. Apr. 8, 2025) (finding that § 1367(d)'s tolling provision applied to a state claim against a municipal officer).   Therefore, it appears that Stallworth and Marshall's state claims would be tolled should this court dismiss them.

While it appears at first blush that dismissal of the state claims would not be unfair to Stallworth and Marshall, the court recognizes that the parties have not addressed the propriety of dismissal of the state claims for the reasons discussed above.   The court will therefore provide the parties with an opportunity to submit supplemental briefing on this issue before reaching its ultimate decision on the state claims.

*** 

25

Accordingly, it is ORDERED that defendants John G. Barton and City of Andalusia's motion for summary judgment (Doc. 19) is resolved as follows:

(1) As to the federal claims, summary judgment is granted against plaintiffs Twyla Stallworth and Jermari Marshall and in favor of defendant John G. Barton.

(2) As to the state claims, the motion is held in abeyance pending supplemental briefing from the parties as to whether these claims should be dismissed with leave to refile in state court.

(3) By no later than March 24, 2026, counsel for the parties are to file supplemental briefs addressing whether the court, in its discretion, should dismiss the state claims with leave to be refiled in state court.

DONE, this the 16th day of March, 2026.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE

26